Next up here, Counsel, you may proceed. Thank you, Your Honor. May it please the Court, good morning. My name is Dan Donovan. I'm from Great Falls. I'm co-counsel with Jim Bartlett of Kalispell. We represent John Lence. And with permission of the Court, we'd like to split our argument. You may do so. Thank you, Your Honor. The remedy John Lence is seeking is a reinstatement of his 21-month sentence. And it happens to be that today, January 13, 2006, he'd be eligible for placement and pre-release on this very date under that sentence. Currently, as you know, he's serving a 33-month sentence, which would put him a year or so away from his release. And our primary argument for that remedy is to apply the protections in a ruling of the Ameline and Bonk case, which came down last year, about three weeks after Mr. Lence was resentenced. Under Ameline, we feel that he would be entitled to have the original judge, who was Chief Judge Malloy, sit on the case, because the case law indicates that with the exception of death, disability, or retirement, the original judge should sit on the case. In this case, Judge Malloy called in, took himself off, basically, and called in Judge Haddon. Well, is there anything in the record which indicates that Judge Malloy would have sentenced differently? Isn't part of the problem that we remanded for resentencing in accordance with the principles that were established in that case? Wouldn't Judge Malloy have been required to make the same sentence? Well, we don't think so, Your Honor, because when Malloy resents Mr. Lence, Judge Malloy originally sent Mr. Lence 24 months. The government appealed that, and that was reversed under the former Feeney standard. And then we think that that sentence would now, under Booker, be legal and be affirmed. And then when Judge Malloy resents Mr. Lence in July of 2004, he specifically said this sentence is 21 months higher than it should be. I have to do what's legal. I have to do what's right. And that's a primary reason we appealed and a primary reason we requested a remand for resentencing. And it's still not understandable to me, but when Judge Haddon resentenced Mr. Lence, there was no reference to that finding or that statement by Judge Malloy, nor to any of the other reasons that Judge Malloy gave throughout the proceedings. Well, take it issue by issue. On the question of whether it was error to transfer the case to Judge Haddon, I don't see anything in the record which indicates that there was an objection to that. We admittedly did not object, Your Honor, and we thought we didn't have any grounds to, but we contend we didn't know about the Ameline and Bach decision that would have given us reason to object and request that Judge Malloy stay on the case, because to our knowledge, Judge Malloy wasn't incapacitated for any reason. We think he took himself off the case. It's not in the record due to his longstanding dispute with our U.S. Attorney Bill Mercer that Bill Mercer had previously, over time, criticized Judge Malloy for downward departures and, in particular, a downward departure in this case with Mr. Lence. Was there a personal relationship of some sort between Judge Haddon and the defendant? There was a personal relationship, or at least a familiar relationship, but it wasn't to our knowledge anything negative. When Mr. Lence was in law school at the University of Montana, then Mr. Haddon was an adjunct professor, and also Mr. Haddon, prior to becoming Judge Haddon, represented Mr. Lence years ago in some litigation. And this, of course, was brought up at the beginning of the re-sensing hearing, and the opportunity was given to Mr. Lence to ask for Judge Haddon to remove himself, and he did, and there was no indication us in that Judge Malloy would come back on the case. We would have had no idea who the judge would be if Judge Haddon had left. What about the preponderance standard at the sentencing hearing? Why isn't that appropriate? The preponderance for the guideline enhancements? Yeah. Well, we argued that that should apply. The DARE case that's cited in the government's brief seems to indicate that that does not apply. Well, doesn't DARE dispose of that? I think so, Your Honor. Counsel, you're down to five minutes. You may wish to share or not. It's up to you. Okay. Well, I'm going to just say one more thing. In the Ameline opinion written by Judge Wardlaw, there's a lot of language about how Booker should be applied and how the Booker principle should be reviewed, and I think that in this case Judge Haddon never did address anything talked about by Judge Malloy in the way of mitigating factors, and perhaps most importantly, the factor that's required under 3553A, which is disparity in sentencing. And we think that's a real important point and a factor that Judge Malloy used repeatedly to justify, first, the 24-month sentence and, secondly, the 21-month sentence. And I'll defer the rest of this time to Mr. Bartlett. May it please the Court, I would ask the Court to look at the recent case of Pinney that came down and, despite Dare, it may be with the Pinney case that the burden of proof is beyond a reasonable doubt for enhancements that are uncharged. And we would submit that the enhancements that were utilized in this case were uncharged enhancements, and so I don't think Dare has definitively been resolved in this circuit. And the Pinney case was cited in our letter to the Court recently. Counsel, when was that letter sent? I have a copy of a letter from Mr. Donovan. Did you send a separate letter? No. It was the same letter from Mr. Donovan. All right. Well, help me find the Pinney case. Which case is it? F-I-N-N-E-Y. I have a United States versus Fifield. I'm sorry? Oh, it's Fifield. Oh, all right. I see the Fifield case. There is some language in that about uncharged conduct. Maybe it is the beyond a reasonable doubt. The other site that I'd like you to write down if you would, it's a U.S. Supreme Court case, 1974. It's Blackledge B-L-A-C-K-L-A-D-G-E versus Perry at 417 U.S. 21. It's a 1974 case, and at pages 27 and 28, they held that the same Dupross concerns about vindictiveness on sentences that are higher precludes a prosecutor from seeking a higher sentence unless the presumption of vindictiveness is rebutted. So, it's our position that when we argue the higher sentence and we come back on remand with a promise, if you will, from Judge Malloy that he gave too much time, wanted to give lower time, and we get a different judge that gives more time, and the prosecutor is arguing for more time when the prosecutor, the previous prosecutor who was the trial attorney, had argued for less time, that for the second prosecutor who was not the trial attorney to say we want more time, he would have had to explain on the record why his argument was not being vindictive. We also think that Judge Haddon does not explain in writing why he justifies his greater sentence than Judge Malloy, and the only way he could have done so was to compare what Malloy had said and done and why he rejects that as if he was an appellate court of some kind. Must we assume that Judge Haddon was aware of the full record of the prior case? No, no, we don't. Judge Haddon says that he saw the record. He doesn't say he read the transcripts. He doesn't say he had the transcript. He says that he looked at the documents that were in the file, which would include the appellate opinions, but he never indicated that he had read the transcript, and to us, he should have read the transcript or have a full record, so we disagree with this government's full record, including have reviewed the transcript. Counselor, you're down to less than a minute. You may want to reserve that time. Thank you. Certainly. We'll hear from the government. May you please support my name is Ellen Meltzer. I'm with the Department of Justice in Washington, D.C. As to the first issue, as to whether there was any error in the transfer to Judge Haddon for resentencing, immediately after the Booker case, in fact, two days after the Supreme Court issued its opinion, counsel filed a motion in this court for remand for resentence, which he said should be in accordance with Booker. The government didn't oppose it because Lentz had interposed an objection in the District Court on Sixth Amendment grounds as to the enhancement for loss, and the government wouldn't be able to prove that any error was harmless. The remand order from this case contained absolutely no limitation on the ability of the District Court to resentence Mr. Lentz. The remand order simply stated that the unopposed motion for remand to the District Court for resentencing is granted, defendant's sentence is vacated, and the court cited Booker Enameline 1. There were certainly no reference in the remand order to the case being sent back to the same District Court judge who had initially sentenced Mr. Lentz. Our later cases do suggest that, though, and in terms of the timing, did the ultimate sentencing happen before or after our cases that have said that ordinarily it should go back to the same judge? The sentencing in this case occurred in May of 05, and the Enameline 3 decision was approximately three weeks later, which talked about the limited remand. But the limited remand in Enameline, and it's the government's contention that Enameline has nothing to do with this particular case, only has to do with cases where there's plain error where the defendant did not object in the District Court on Sixth Amendment grounds or object to the mandatory nature of the guidelines. Enameline did not in any way restrict Judge Molloy's ability to transfer this case for resentencing. Transfers are only improper where there's some indication in the record that there was a bad motive that the transfer was for improper reasons. There's certainly no indication in the record or even an allegation in this case that Judge Molloy transferred this case for any bad motive. We have no idea why he transferred it. But Mr. Lentz and his counsel was given every single opportunity before the District Court to object to Judge Hatton passing sentence in this case. Counsel, there are a number of cases that predate Booker that deal with the question of how we review a sentence that is higher than the sentence that had originally been imposed and then there's a remand. Is there any reason that you can think of that the general legal standards that we would apply should be different after Booker? No. I think that the standards should still apply. That if there's a change in the facts or a change in the law, that there can be a higher sentence. And in this case, there was a C change in the law with it being clarified that the District Court had the ability to utilize the enhancements which were not imposed during the second sentence. When the government and I guess improperly agreed that those enhancements should not be utilized because of the confusion post-Blakely. And the second sentence in this case was imposed two weeks after the Blakely decision when there was a tremendous amount of confusion as to whether enhancements had to be tried before the jury. Well, so if the government decides not to pursue an erroneous understanding of the law, it's your position that the government is not bound by that earlier decision? That's correct, Your Honor. Because it wasn't contractual in nature, I gather? There was no contract in this case. We made it very clear before Judge Malloy that there was confusion that we were somewhat uncomfortable in view of Blakely with those enhancements being imposed. But I don't see why and I think that the courts have made clear that when there is a clarification in the law, and there's a case before this court and the name escapes me at the moment, post-Apprendi, where the court imposed a higher sentence because there was no longer confusion once there was appellate guidance. So basically, he requested remand at his own risk and he would have been better off not to ask for it. I think that, you know, he had an expectation of a lower sentence had it gone to Judge Malloy, but that expectation was certainly not a judicially enforceable promise. And I don't see how this court can enforce it. You said earlier that this isn't, strictly speaking, an Ammaline case, and so the discussion of sending something to the same judge doesn't apply by its own terms. But why wouldn't the same logic apply to this remand as would apply to what you view as a strictly Ammaline remand? That is, that it should go back, in the absence of special circumstances, go back to the same judge. It did go back to the same judge initially, but I don't, I guess I don't see any restriction within Ammaline or any other case to say that if that judge is unavailable for any reason, and those reasons can go beyond death, disability, or retirement, that that judge can transfer the case to another sitting judge. What's your view of what the record shows as to the reason for Judge Malloy's unavailability? There's nothing that shows in the record, Your Honor, and I'm not going to speculate as to the counsel there. So as far as you're concerned, you're relying only on his inherent authority to transfer things, but no reason whatsoever appears in the record? That's correct, Your Honor. There's nothing in the record at all. Unless the Court has any questions. Well, just back to Ammaline, doesn't Ammaline infer the notion that it should be sent back to the same? In other words, that the same judge should reconsider? In a plain error case. Only? Only in a plain error case. And, in fact, Ammaline had in a footnote that the that where the parties agreed to a resentencing, that the procedures that are outlined in Ammaline do not apply. Now, maybe it was understood in that footnote that it might go back to the same judge, but there certainly are many cases of unavailability. What's the logic, though, of limiting that part of Ammaline only to plain error cases? In other words, there are two classes of cases. One is in which the defendant pointed out the error, and the other is the class of cases in which we discover the error for the first time. But what is the principle basis to say that the same judge, but the ones in which the defendant noticed the error, there's no rule, or there should not be a similar presumption? I understand that they're different, but I don't understand why that difference would result in getting a different judge on remand. I guess I can't speak for why the Court raised Ammaline opinion the way that it did, but I Presumably it's because, at least as I understand it, because I wasn't on any of those panels, but as I understand it, it's the idea that the sentencing judge now has more discretion than the judge thought at the time of the earlier sentencing, and therefore that thought process should be allowed to be completed by the same person who started it. And if that's the rationale, why wouldn't that apply? But, Your Honor, Judge Malloy was fully aware of obviously the Booker opinion and the initial Ammaline decisions from this Court in sending the case back to the judge, and he still decided, for whatever reason, that he wasn't going to hear the case for resentencing. And I think that unless something improper appears in the record, that decision has to be respected by this Court. Counsel, you appear, I assume, in other circuits. Is there a general trend or practice at work here where the inference is that it goes back to the sentencing judge? I'm truly not certain, Your Honor. I'm sorry? I'm not certain, Your Honor. Oh, you're not? Okay, that's fine. I've only had one other Booker argument, and it was on a completely different ground, so I just don't know. That's fine. Thank you. Thank you, Your Honor. Counsel has some reserved time. A couple points, Your Honor. We argue that simply because Mr. Lentz made an objection on six amendment grounds, and that was harmless error, not plain error, should not make him entitled to less protections than those with the plain error under Amline. And indeed, it was plain error under the so-called unconstitutional issue of that no one really predicted that the Supreme Court would order that the guidelines be... Now, you say less protection. Is there a... Are you arguing some sort of inherent right to be resentenced by the same judge? Is that the protection you're talking about? Well, inherent right, I think that's what the case Amline's saying, and we didn't get that because Amline came out afterwards. And then the other point is that Judge Molloy specifically said the sentence would be lighter. And even if you disregard Amline, if you analyze Judge Haddon's decision on the basis of Booker and the Booker guidelines as set forth in Judge Wardlaw's opinion, there's no mention by... at all by Judge Haddon as to the reasons that Judge Molloy previously had for leniency. And we contend that those... that kind of reasoning would be required by the Sanders case, which incorporates the Garcia case from the Second Circuit. Thank you, Counsel. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Graber, Bea